FILED
COURT OF APPEALS
DIVISION II

2013 APR 30 AM 8: 37

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42352-9-II |
| Respondent, | |
| v. | |
| RONALD ALLEN BRADY, | UNPUBLISHED OPINION |
| Appellant. | |

QUINN-BRINTNALL, J. — A jury found Ronald Brady guilty of second degree manslaughter after Brady shot and killed Thomas McKenzie. Brady appeals his conviction, arguing that (1) the trial court erred by excluding alleged impeachment evidence that Thomas[1] was at the property to commit burglary, (2) the trial court erred by refusing to give Brady's proposed jury instruction on the right to resist a felony, (3) the prosecutor engaged in misconduct during closing argument, and (4) the evidence was insufficient to support the jury's verdict. Brady also filed a statement of additional grounds (SAG)[2] alleging several additional errors. We hold the trial court did not err, Brady was not prejudiced by the prosecutor's improper remarks,

---

[1] We refer to Thomas McKenzie and his wife, Joanna McKenzie, by their first names for clarity. We intend no disrespect.

[2] RAP 10.10.

and sufficient evidence supports the jury's verdict. In addition, Brady's SAG claims do not raise any reversible error. Accordingly, we affirm.

FACTS

Brady's house, located at 2155 State Route 508 (2155 property), burned down in 1996. After the fire at the 2155 property, Brady lived in the house located on the adjoining property, 2137 State Route 508 (2137 property), while rebuilding the house on the 2155 property.

On April 19, 2010, Deputy W. Duncan Adkisson of the Lewis County Sheriff's Office responded to the report of a burglary at the 2155 property. Brady reported that some of the windows at the 2155 property had been tampered with and some things may have been missing from the house. Adkisson told Brady it was possible that the people who had entered the house may return and that law enforcement would check on the property later that evening.

Despite Deputy Adkisson's assurance that law enforcement would check on the house, Brady took his 12-gauge shotgun to the 2155 property, where he also kept his .22 rifle, and "prepared [himself] for a return of the burglars." 4 Report of Proceedings (RP) at 548. At approximately 9:30 PM, Brady saw the lights of a vehicle in the driveway, opened the garage door, and began firing his .22 rifle at the truck. When one of the people in the driveway, Thomas, turned a flashlight in Brady's direction, Brady fired at the light, hitting Thomas in the chest. By the time the police arrived, Thomas had died.

Thomas's wife, Joanna, was in the truck at the 2155 property when the shooting started. Screaming, Joanna hid behind the truck to avoid getting shot. After Brady stopped shooting, she ran to flag down a car and call 911.

2

On September 23, 2010, the State charged Brady with one count of first degree manslaughter (Thomas) and one count of first degree assault (Joanna). On November 18, the State filed an amended information charging Brady with first degree murder for Thomas's death.

On December 1, 2010, the State moved in limine to exclude any evidence "that either victim entered onto the property of the defendant prior to the time of the shooting or had any involvement in the suspected burglary of the defendant's building earlier that day." 1 Clerk's Papers (CP) at 21. The State also moved to exclude any evidence about why the McKenzies were at the property, that the McKenzies had burglary tools in their truck, that the police later recovered stolen property from Thomas's house, and that Joanna had pleaded guilty to attempted residential burglary for entering Brady's property. The trial court granted the State's motion.

Brady's jury trial began on June 20, 2011. Joanna testified that she and Thomas pulled into the driveway of the 2155 property just before 10 PM on April 19, 2010. Thomas got out of the car and knocked on the door of the house. Shortly thereafter, the garage door opened and the shooting started. During the shooting, Joanna hid behind the truck and began screaming "as loud as [she] could." 2 RP at 201. Then she saw Thomas fall to the ground and stop moving. After the shooting stopped, Joanna flagged down a car and used the driver's cell phone to call 911.

Brady testified that after reporting the earlier burglary, he ate dinner, gathered his 12-gauge shotgun, went to the 2155 property, and "prepared [himself] for a return of the burglars." 4 RP at 548. Brady stored his .22 rifle at the 2155 property. Brady "settled in" at the 2155 property around 7:00 PM and read internet websites on his laptop until about 9:30 PM. 4 RP at 549. At 9:30 PM, Brady got up to stretch his legs, bringing the .22 rifle with him. At that point, Brady observed a truck pull into the driveway and what appeared to be flashlights outside the

house. Brady testified that he tried to call 911 but forgot to hit send on his cell phone after dialing in the number.

Brady testified that he heard the people outside say, "'The cops are on the way," so he "figured [he] better try to disable their vehicle." 4 RP at 552. He opened the garage door and attempted to disable the truck by trying to shoot out the tires. Brady testified that after he began shooting,

> I had two flashlights shine on my face from about 90 degrees directly, so it was from separate directions. And I thought it very strange, bizarre that instead of retreating that they were holding flashlights at me. And I -- only thing I could think of in an instant is that they -- the only reason why people would not be afraid of somebody with a weapon is that they had a weapon. So I was afraid for my life.

4 RP at 553. Brady testified that at that point he began shooting at the light.

The trial court instructed the jury on first degree murder and the lesser included offenses of second degree murder, first degree manslaughter, and second degree manslaughter. The jury was also instructed on first degree assault and the lesser included offense of second degree assault. In addition, the trial court instructed the jury on justifiable homicide[3] as a defense to the

---

[3] The justifiable homicide instruction stated,

> It is a defense to a charge of Murder in the First Degree, Murder in the Second Degree, Manslaughter in the First Degree, and Manslaughter in the Second Degree that the homicide was justifiable as defined in this instruction.
>
> A person is entitled to act on appearances in defending himself, if that person believes in good faith and on reasonable grounds that he is in actual danger of great personal injury, although it afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for a homicide to be justifiable.
>
> Homicide is justifiable when committed in the lawful defense of the slayer when:
>
> 1) the slayer reasonably believed that the person slain or others whom the defendant reasonably believed were acting in concert with the person slain intended to inflict death or great personal injury;

4

No. 42352-9-II

murder and manslaughter charges as well as the use of lawful force[4] as a defense to the assault charges.

On June 24, 2011, the jury found Brady guilty of second degree manslaughter with a firearm enhancement but the jury acquitted him of all other charges. After the jury acquitted Brady of the assault against Joanna, the trial court gave the jury special verdict forms to

---

2) the slayer reasonably believed that there was imminent danger of such harm being accomplished; and

3) the slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him, at the time of and prior to the incident.

The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

2 CP at 231.

[4] The lawful use of force instruction stated,

It is a defense to a charge of Assault in the First Degree and Assault in the Second Degree that the force used or attempted was lawful as defined in this instruction.

A person is entitled to act on appearances in defending himself, if he believes in good faith and on reasonable grounds that he is in actual danger of injury, although it afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for the use of force to be lawful.

The use of or attempt to use force upon or toward the person of another is lawful when used or attempted by a person who reasonably believes that he is about to be injured, and when the force is not more than is necessary.

The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.

The State has the burden of proving beyond a reasonable doubt that the force used or attempted by the defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

2 CP at 242.

determine whether Brady was entitled to reimbursement for defense costs. The jury found that (1) Brady's use of force was lawful, and (2) Brady was engaged in "criminal conduct substantially related to the events giving rise to the crime with which the defendant was charged." 2 CP at 269.

On July 6, 2011, the trial court sentenced Brady on the second degree manslaughter charge. Brady's standard sentencing range was 21 to 27 months. With the mandatory 36-month firearm enhancement, Brady's standard sentencing range was 57 to 63 months. The trial court sentenced Brady to 63 months confinement and 18 months community custody. Brady timely appeals.

## ANALYSIS

### IMPEACHMENT EVIDENCE

Brady argues that the trial court violated his due process right to a fair trial by excluding evidence which Brady claims was critical for impeaching Joanna's testimony. Brady specifically argues that the trial court erred by excluding (1) Joanna's statements to the police after the shooting, (2) evidence that Thomas and Joanna committed the earlier burglary, (3) evidence that burglary tools and stocking caps were found in the McKenzies' truck at the time of the shooting, (4) evidence of stolen property that was later recovered from Thomas's house, (5) evidence that Joanna was high on methamphetamine at the time of the burglary, and (6) Joanna's conviction for attempted residential burglary related to the 2155 property. The trial court found that the majority of the evidence Brady sought to introduce was not known to him at the time of the shooting and was, therefore, irrelevant. The trial court properly allowed Brady to introduce specific evidence that was relevant to impeachment and did not err.

No. 42352-9-II

IMPEACHMENT

We review a trial court's evidentiary rulings limiting the scope of cross-examination for manifest abuse of discretion. *State v. Campbell*, 103 Wn.2d 1, 20, 691 P.2d 929 (1984), *cert. denied*, 471 U.S. 1094 (1985). "The right to confront and cross-examine adverse witnesses is guaranteed by both the federal and state constitutions." *State v. Darden*, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002). But the right to confront and cross-examine adverse witnesses is not absolute and is limited by general considerations of relevance. *Darden*, 145 Wn.2d at 621 (citing ER 401, 403; *State v. Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983)).

Brady argues that Joanna's prior statements to the police are relevant impeachment evidence because they contradict the *implication* that Thomas and Joanna were at the 2155 property for a lawful purpose. ER 613[5] governs the admissibility of prior inconsistent statements. Under ER 613, prior inconsistent statements can only be admitted to impeach if the witness's testimony was a fact of consequence to the action. *State v. Allen S.*, 98 Wn. App. 452, 468-69, 989 P.2d 1222 (1999), *review denied*, 140 Wn.2d 1022 (2000). If a witness claims he cannot remember making the statement and says nothing from the witness stand that either party could have used for "its truth to prove a fact of consequence to the action," prior inconsistent statements are not relevant or admissible for impeachment purposes. *Allen S.*, 98 Wn. App. at 469; *see also* 5D KARL B. TEGLAND, WASHINGTON PRACTICE: COURTROOM HANDBOOK ON WASHINGTON EVIDENCE, at 361 (2012-13 ed.). In other words, if the prior inconsistent statement

---

[5] ER 613(b) provides,
> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.

7

does not contradict the witness's actual testimony, the prior inconsistent statement is not inconsistent with that testimony and is inadmissible.

Brady alleges that Joanna's prior statements to the police would show that she did not go to the 2155 property for any reason other than to commit a burglary. But Joanna did not testify about why she and Thomas went to the 2155 property. Accordingly, there was no testimony to impeach with her prior statements to the police and the trial court did not abuse its discretion by excluding evidence of Joanna's prior statements under ER 613.

Brady also argues that the evidence proving Thomas and Joanna had committed the earlier burglary at the 2155 property and the evidence, including Joanna's prior statements to the police, proving Thomas and Joanna were at the 2155 property to commit another burglary was impeachment testimony. But any evidence about the earlier burglary or evidence that Thomas and Joanna intended to commit a burglary would be impeachment evidence if it contradicted Joanna's testimony. Because Joanna did not testify to anything related to the earlier burglary, nor did she testify about why she and Thomas went to the 2155 property, the evidence that Brady sought to introduce was not impeachment evidence.

RELEVANCE

Although Brady attempts to characterize the evidence he sought to introduce as impeachment evidence, his arguments demonstrate that he wanted to introduce the evidence for substantive purposes. Brady argues that because Joanna's testimony led "the jury to believe that she and her husband might well have been honest travelers stopping for aide [sic], not acting in any type of suspicious manner," the evidence that Thomas and Joanna were burglars would have undermined her credibility. Br. of Appellant at 27. But Brady also argues that the trial court denied him a fair trial by excluding "relevant, exculpatory evidence" including "some of its best

8

evidence to support the defendant's claims at trial." Br. of Appellant at 28-29. Exculpatory evidence and evidence used to prove the defendant's claims at trial is substantive, not impeachment, evidence. Therefore, to be admissible, such evidence must be relevant.

Evidence is relevant if it has "'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *State v. Gregory*, 158 Wn.2d 759, 835, 147 P.3d 1201 (2006) (quoting ER 401). If the trial court's evidentiary ruling is solely based on considerations of relevance, unrelated to the defendant's right to confrontation or cross-examination of witnesses, we review the trial court's decision for abuse of discretion. *State v. Finch*, 137 Wn.2d 792, 810, 975 P.2d 967, *cert. denied*, 528 U.S. 922 (1999). The trial court abuses its discretion if the evidentiary ruling is based on untenable grounds or untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The evidence that Brady sought to introduce would be relevant if it tended to make the fact that he acted in self-defense more or less probable. For the purposes of proving a self-defense claim, evidence is relevant if Brady *knew* only about the evidence at the time of the shooting. *State v. Walker*, 13 Wn. App. 545, 549-50, 536 P.2d 657 (evidence of the victim's prior acts is admissible for proving a self-defense claim provided that the defendant was aware of the acts at the time), *review denied*, 86 Wn.2d 1005 (1975). At the time of the shooting, Brady did not know that Thomas and Joanna had committed the earlier burglary at the 2155 property; he also did not know about any of the evidence proving that Thomas and Joanna had arrived at the 2155 property to commit a burglary. Accordingly, the evidence was irrelevant to proving his self-defense claim and the trial court did not abuse its discretion by excluding it.

OPINION TESTIMONY REGARDING JOANNA'S DRUG USE

Finally, Brady argues that he was not permitted to introduce an officer's testimony that Joanna's pupils were constricted because she had been using drugs on the night of the shooting. But Brady mischaracterizes the trial court's ruling. The trial court ruled that the officer who spoke to Joanna on the night of the shooting was not qualified to offer an opinion about whether Joanna's constricted pupils were indicative of drug use.[6] Under ER 702, a witness must be qualified as an expert by "knowledge, skill, experience, training, or education" before the witness may testify to an opinion. Here, the officer was not a trained drug recognition expert (DRE), therefore he was not qualified as an expert to offer an opinion on whether Joanna's restricted pupils were indicative of drug use. *See State v. Baity*, 140 Wn.2d 1, 18, 991 P.2d 1151 (2000) (because DRE evidence is admissible under *Frye v. United States*, 293 F. 1013 (1923), "[a] properly qualified expert may use the 12-step protocol and the chart of categories of drugs to relate an opinion about the presence or absence of certain categories of drugs in a suspect's system"). Accordingly, the trial court did not abuse its discretion by excluding testimony from the officer as to his speculative opinion regarding whether Joanna's constricted pupils were indicative of drug use.

JURY INSTRUCTION

Brady assigns error to the trial court's refusal to give his proposed instruction on the right to resist a felony. The trial court properly instructed the jury on justifiable homicide and the lawful use of force. Furthermore, the facts of the case did not support giving an instruction on

---

[6] The trial court permitted Brady to ask Joanna if she had used drugs on the night of the shooting, but because Brady could offer no evidence establishing that Joanna had used drugs that night (outside of the officer's unqualified opinion testimony), Brady was limited to accepting Joanna's answer.

resistance to a felony because any felony that may have been committed did not pose an immediate threat of death or great bodily harm. Therefore, the trial court did not err by refusing to give Brady's proposed instruction.

We review a trial court's refusal to give a proposed jury instruction for abuse of discretion. *State v. Picard*, 90 Wn. App. 890, 902, 954 P.2d 336, *review denied*, 136 Wn.2d 1021 (1998). A trial court abuses its discretion when it exercises its discretion on untenable grounds or for untenable reasons. *Carroll*, 79 Wn.2d at 26. It is reversible error for a trial court to refuse to give a proposed instruction if the instruction states the proper law and the evidence supports it. *State v. Ager*, 128 Wn.2d 85, 93, 904 P.2d 715 (1995).

Brady proposed the following jury instruction:

> It is a defense to a charge of murder or manslaughter that the homicide was justifiable as defined in this instruction.
> Homicide is justifiable when committed in the actual resistance of an attempt to commit a felony upon the slayer or in the presence of the slayer or upon or in a dwelling or other place of abode in which the slayer is present.
> The slayer may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him at the time and prior to the incident.
> The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

1 CP at 167; 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 16.03, at 239 (3d ed. 2008). The trial court instructed the jury on justifiable homicide and the lawful use of force. But it refused to give Brady's proposed instruction because at the time of the shooting, Brady was not resisting a felony that would have justified the use of deadly force. The trial court determined that "the only crime that was committed at the time of the use of the force here was a criminal trespass as there was no entry as required for a burglary. But

11

more to the point, even if the burglary was about to be committed or even had been committed, there is no evidence that the actions of the decedent threatened the defendant's life of [sic] great bodily harm under the circumstances that would allow the defendant to use that claim." 5 RP at 597. The trial court's refusal to give Brady's instruction was a proper application of the law to the evidence and the trial court did not abuse its discretion by refusing to give Brady's instruction on the right to resist the commission of a felony.

Brady cites to cases addressing the standard we apply when determining whether a defendant was entitled to a general self-defense instruction. Brady is correct in stating that a defendant is entitled to a general self-defense instruction once he has produced any evidence supporting his self-defense claim. *State v. Adams*, 31 Wn. App. 393, 395, 641 P.2d 1207 (1982). Here, the trial court gave both self-defense instructions (justifiable homicide and lawful use of force), and the "any evidence" standard is not applicable to our analysis of whether the trial court erred by refusing to give Brady's proposed instruction on the right to resist a felony.

When determining whether a defendant is entitled to an instruction based on the right to resist the commission of a felony, the trial court engages in an "individualized determination of necessity, even where an attack on the defendant's person occurred." *State v. Brightman*, 155 Wn.2d 506, 522, 122 P.3d 150 (2005). This is because any homicide, even one committed while resisting the commission of a felony, "'is not justified *unless* the attack on the defendant's person threatens life or great bodily harm.'" *Brightman*, 155 Wn.2d at 522 (quoting *State v. Nyland*, 47 Wn.2d 240, 242, 287 P.2d 345 (1955)). The requirement that the felony being resisted poses a threat to the defendant's life or great bodily harm applies to both crimes against the defendant's person and the defendant's property. *State v. Griffith*, 91 Wn.2d 572, 576, 589 P.2d 799 (1979).

In *Griffith*, our Supreme Court summarized the facts as follows:

> When the evidence is viewed in the light most favorable to the defendant, it shows as follows: After the defendant had taken the [children's] basketball into his home and called the police, he went out to his car and obtained the gun, knowing that it was loaded. When Mr. Stillwell came to the door [to retrieve the children's basketball], the defendant engaged in discussion with him and then with Mr. York. During this discussion, the defendant was about 3 feet back from the doorsill, and his mother was standing to his right. Mr. York, according to the defendant's testimony, then stepped on the doorsill with one foot, and the defendant's mother moved forward. Mr. York placed one hand on the doorjamb and kept insisting that the basketball be returned to him. The basketball was on a chair approximately 5 feet behind the defendant. The defendant then brought his gun into sight, raised it and pointed it at Mr. York. The defendant testified that Mr. York made a comment to the effect that the defendant was imitating a television character and that Mr. York appeared to be moving toward him when he fired.

91 Wn.2d at 575-76. Based on these facts, our Supreme Court held that "the use of deadly force was unjustified as a matter of law." *Griffith*, 91 Wn.2d at 576. Our Supreme Court noted, "'In order to sustain this assignment [of error] we would be required to hold that a simple assault or ordinary battery would justify the taking of human life. We are not willing to stand sponsor for such a doctrine." *Griffith*, 91 Wn.2d at 577 (quoting *State v. Churchill*, 52 Wash. 210, 224, 100 P. 309 (1909)).

Here, Brady's argument is even less persuasive than Griffith's. There was no evidence that Thomas and Joanna actually attempted to enter the house on the 2155 property when Brady started shooting. Importantly, Brady testified that he began shooting because he thought the people on the property were leaving and he did not want them to get away. The trial court correctly noted that the only crime that had been committed at the time Brady began shooting was criminal trespass. *See* RCW 9A.52.080. Even if Thomas and Joanna had arrived at the property with the intention to commit a burglary, Brady's testimony that he believed they were going to leave demonstrates he no longer believed a burglary was going to be committed at the time he began shooting. Furthermore, Thomas and Joanna never had any contact with Brady and

13

took no action prior to the shooting that would demonstrate an imminent risk to his life or intention and ability to do him bodily harm. Accordingly, the trial court properly refused to give Brady's right to resist the commission of a felony instruction on the basis that there was no evidence of a dangerous felony that was being or was about to be committed.

PROSECUTORIAL MISCONDUCT

Brady argues that the prosecutor engaged in misconduct by referencing facts not in evidence and appealing to the passion and prejudice of the jury during closing argument. Although the prosecutor improperly referred to Thomas's family during closing argument, Brady has failed to show prejudice and his prosecutorial misconduct claim fails.

A defendant claiming prosecutorial misconduct "'bears the burden of establishing the impropriety of the prosecuting attorney's comments and their prejudicial effect.'" *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006) (quoting *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998)). "References to evidence outside of the record and bald appeals to passion and prejudice constitute misconduct." *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009) (citing *State v. Belgarde*, 110 Wn.2d 504, 507-08, 755 P.2d 174 (1988)). Comments are deemed prejudicial only where there is a substantial likelihood that they affected the verdict. *McKenzie*, 157 Wn.2d at 52. "A prosecuting attorney's allegedly improper remarks must be reviewed in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury." *Brown*, 132 Wn.2d at 561. A prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and to express such inferences to the jury. *State v. Stenson*, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997).

14

First, Brady argues that the prosecutor made an argument based "upon facts known to the prosecutor and not presented at trial." Br. of Appellant at 40. During closing argument, the prosecutor argued, "You and I may never have met Thomas Stanley McKenzie, but I do know a few things about him. We know he had siblings. . . . We know he had siblings, we know he had kids, we know he had a wife. We know he didn't deserve to die in the manner that he did." 5 RP at 745-46. Brady objected and his objection was overruled. On appeal, Brady argues that this was misconduct because there was no evidence presented at trial that Thomas had siblings or children, but Brady is incorrect. At trial, Detective Bruce Kimsey of the Lewis County Sheriff's Office testified without objection that Thomas had children. Kimsey also testified that Thomas's truck was released to Thomas's brother. Accordingly, there were facts in evidence that Thomas had children and a sibling and the prosecutor did not improperly reference facts not in evidence.

Brady also argues that the prosecutor committed misconduct by expanding on the argument about Thomas's children and sibling and arguing, "Tom McKenzie's family, friends, they have to deal with this loss for the rest of their lives." 5 RP at 746. Brady again objected, but the trial court overruled the objection. The effect of the crime on Thomas's family has no relevance to Brady's guilt, and it was improper for the prosecutor to refer to Thomas's family during closing argument. But these challenged references to the impact on Thomas's family were brief and not extensively detailed. We are convinced that there is no substantial likelihood that the remarks affected the jury's verdict. *McKenzie*, 157 Wn.2d at 52.

Although the State's comments referring to Thomas's family were improper, Brady has failed to meet his burden to show prejudice and Brady's claim fails. *See McKenzie*, 157 Wn.2d at 52.

No. 42352-9-II

SUFFICIENCY OF THE EVIDENCE

Finally, Brady argues that the evidence is insufficient to support the jury's verdict finding Brady guilty of second degree manslaughter. Brady does not dispute the sufficiency of the evidence proving that he shot and killed Thomas. Instead, Brady argues that because the jury found that he acted in self-defense in regard to the assault on Joanna, he must have acted in self-defense when he shot Thomas. Brady alleges that "there was no way to distinguish between the crime he allegedly committed against Thomas McKenzie and the crime he allegedly committed against Joanne [sic] McKenzie." Br. of Appellant at 44-45. There is substantial evidence in the record to support the jury's verdict and Brady's insufficient evidence claim fails.

Evidence is sufficient if, when viewed in a light most favorable to the jury's verdict, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Our role is not to reweigh the evidence and substitute our judgment for the jury's. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Instead, because the jurors observed the witnesses testify first hand, we defer to the jury's resolution of conflicting testimony, evaluation of witness credibility, and decision regarding the persuasiveness and the appropriate weight to be given the evidence. *See State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992).

Brady was charged with both a homicide (Thomas) and an assault (Joanna). Although self-defense is a defense to both charges, the standards for self-defense differ. To convict Brady of the assault on Joanna, the State had to prove that the use of force was not lawful. Force is

16

lawful when the defendant "reasonably believes that he is about to be injured, and when the force is not more than is necessary." 2 CP at 242. To convict Brady of manslaughter, the State had to prove that the homicide was not justifiable. A homicide is not justifiable unless the defendant reasonably feared death or great personal injury.

Brady argues that "[t]here is no logical way to distinguish between the two sets of charges." Br. of Appellant at 45. We disagree. Brady's own testimony established that he began shooting at the truck where Joanna was standing because he wanted to shoot out the tires and prevent the people on the property from leaving. However, when a flashlight was shone into his eyes, Brady began shooting directly at the person holding the flashlight. A reasonable jury could have found that under the circumstances, attempting to shoot out the tires of the truck was the use of lawful force, but that shining a flashlight at someone did not create a reasonable fear of imminent death or great personal injury sufficient to make shooting directly at the person holding the flashlight a justifiable homicide. Accordingly, sufficient evidence supports the jury's verdict finding Brady guilty of second degree manslaughter.[7]

---

[7] To the extent that Brady's challenge could be characterized as a challenge to inconsistent verdicts, *State v. Ng*, 110 Wn.2d 32, 48, 720 P.2d 632 (1988), is instructive. In *Ng*, our Supreme Court held that inconsistent verdicts do not require reversal. Our Supreme Court concluded "that considerations of jury lenity, and problems inherent in second-guessing the jury's reasoning as to an acquittal dictate our application of [*Dunn v. United States*, 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 2d 356 (1932),] to this case. As the Supreme Court noted, the *Dunn* rule establishes 'the unreviewable power of a jury to return a verdict of not guilty for impermissible reasons.'" *Ng*, 110 Wn.2d at 48 (internal quotation marks omitted) (quoting *United States v. Powell*, 469 U.S. 57, 63, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984)).

No. 42352-9-II

JUDICIAL COMMENT ON THE EVIDENCE

Brady argues that the trial court impermissibly commented on the evidence. The Washington Constitution explicitly prohibits judicial comments on the evidence. WASHINGTON CONSTITUTION, art. IV, § 16. Here, Brady cites two comments the trial court made to support his argument that the trial court improperly commented on the evidence: "'there is no evidence that the actions of the decedent threatened the defendant's life of (sic) great bodily harm'" and "'the defendant here went directly to the successful [use] of deadly force.'" SAG at 1. But the trial court made these comments while explaining its decision refusing Brady's proposed jury instruction on the right to resist a felony and the jury was not present at the time the trial court made the comments. Accordingly, Brady's argument that the trial court impermissibly commented on the evidence must fail.

PROSECUTORIAL MISCONDUCT

Brady also argues that the prosecutor committed misconduct by making false statements during closing arguments. During rebuttal the State argued,

> Could have locked up his house at 2155, gone over to his property and just watched that night. He could have monitored the whole property from his house that was right next to it and called the police the second someone pulled up. But no, he decided he was going to be there when those people came back because nobody's going to be [sic] get away with doing that to him.

5 RP at 740-41. Brady characterizes this argument as a "gross falsehood." SAG at 2. But the State's argument draws reasonable inferences from the evidence presented at trial and was not improper.

A prosecutor has wide latitude in closing argument to draw reasonable inference from the evidence and to express such inference to the jury. *Stenson*, 132 Wn.2d at 727. "A prosecuting

18

attorney's allegedly improper remarks must be reviewed in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury." *Brown*, 132 Wn.2d at 561.

Here, the State presented testimony that the 2155 property and the 2137 property were adjacent properties and the houses were 400 feet apart. The State also introduced photos showing the area surrounding the properties. Based on this evidence, it is a valid inference that Brady could have observed the 2155 property from the 2137 property. Furthermore, the jury was instructed that

> [t]he lawyer's remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

2 CP at 213. We presume the jury follows the trial court's instructions. *State v. Russell*, 125 Wn.2d 24, 84, 882 P.2d 747 (1994), *cert. denied*, 514 U.S. 1129 (1995). Accordingly, we presume that the jury disregarded any argument not supported by the evidence.

EVIDENCE OF JOANNA'S CONSTRICTED PUPILS

Brady argues that the trial court also erred by excluding the testimony that Joanna's pupils were constricted because there was an additional reason to allow the evidence. Specifically, Brady argues,

> The jurors could have used information acquired over their lifetime, in this instance remembering their eighth grade science classes, to impeach her credibility as a witness. They would know that she could have not been able to see very much at night, since very little light was reaching the back of her eyeballs through those constricted pupils.

19

SAG at 3. But Brady did not ask the trial court to admit lay testimony that the officer observed she had constricted pupils for the purposes of allowing the jury to infer that the constricted pupils interfered with her eyesight. Issues not raised at the trial court are not preserved for review by this court. ER 103; RAP 2.5(a). Accordingly, Brady has failed to preserve his challenge to the trial court's ruling excluding testimony regarding Joanna's constricted pupils on grounds other than forming the basis for the opinion that Joanna was under the influence of drugs on the night of the shooting.

APPEARANCE OF FAIRNESS

Next, Brady lists 9 instances of alleged "judicial prejudice." SAG at 4. Brady simply makes a list of the trial court's decisions with which he disagrees. Brady's appearance of fairness claim is not constitutional in nature and may not be raised for the first time on appeal. RAP 2.5(a); *State v. Morgensen*, 148 Wn. App. 81, 90-91, 197 P.3d 715 (2008), *review denied*, 166 Wn.2d 1007 (2009). Brady did not raise a claim of judicial bias or a violation of the appearance of fairness at the trial court, therefore he has waived his challenge.

Furthermore, the party claiming bias or prejudice must support the claim with evidence of the trial court's actual or potential bias. *State v. Gamble*, 168 Wn.2d 161, 187-88, 225 P.3d 973 (2010). "Judicial rulings alone almost never constitute a valid showing of bias." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 692, 101 P.3d 1 (2004) (citing *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994)). Therefore, Brady's appearance of fairness claim, supported solely by the trial court's adverse rulings, must fail.

INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Brady argues that he received ineffective assistance of counsel because (1) defense counsel took a "lackadaisical" approach to preparing for trial, (2) defense counsel

referred to Brady as "Tom" during opening statements, (3) defense counsel did not adequately prepare him to testify, and (4) defense counsel did not file a motion to vacate[8] the jury's guilty verdict on the second degree manslaughter charge. SAG at 6. Brady's first three allegations are based on matters outside the record presented for our review and defense counsel's performance was not deficient for failing to file a CrR 7.4 motion to arrest judgment, thus Brady's ineffective assistance of counsel claim fails.

We do not review matters outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995). Brady's arguments that counsel took a "lackadaisical" approach when preparing for trial and failed to adequately prepare him to testify rest on facts outside the record and are, therefore, outside the scope of review on direct appeal. SAG at 6. Brady also alleges that defense counsel referred to him as "Tom" during opening statements. SAG at 6. But opening statements are not transcribed in the record designated for our review. Therefore, there is not an adequate record to allow us to review Brady's assigned error. RAP 9.2(b); *see also In re Det. of Morgan*, 161 Wn. App. 66, 83, 253 P.3d 394 (2011) ("As the party seeking review, [the appellant] has the burden to perfect the record." (citing RAP 9.2(b); *Bulzomi v. Dep't of Labor & Indus.*, 72 Wn. App. 522, 525, 864 P.2d 996 (1994))).

Brady also argues that defense counsel was ineffective for failing "to ask the court to vacate my guilty verdict." SAG at 6. To prevail on an ineffective assistance of counsel claim, Brady must show both deficient performance and resulting prejudice. *Strickland v. Washington*,

---

[8] It appears that Brady is referring to a motion to arrest judgment under CrR 7.4(a). We refer to the motion by its proper title.

466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel's performance is deficient if it fell below an objective standard of reasonableness. *Stenson*, 132 Wn.2d at 705. Our scrutiny of counsel's performance is highly deferential; we strongly presume reasonableness. *McFarland*, 127 Wn.2d at 335-36. To establish prejudice, a defendant must show a reasonable probability that the outcome would have differed absent the deficient performance. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). If an ineffective assistance of counsel claim fails to support a finding of either deficiency or prejudice, it fails. *Strickland*, 466 U.S. at 697.

A defendant may file a motion to arrest judgment based on "insufficiency of the proof of a material element of the crime." CrR 7.4(a)(3). In *State v. Lopez*, 107 Wn. App. 270, 276-77, 27 P.3d 237 (2001), *aff'd*, 147 Wn.2d 515, 55 P.3d 609 (2002), defense counsel's failure to move to arrest judgment after the State failed to present any evidence establishing an essential element of the crime charged was deficient performance. But here, the State presented sufficient evidence to support the jury's guilty verdict on the second degree manslaughter charge. Furthermore, even if the jury had returned inconsistent verdicts, which it did not, inconsistent verdicts do not warrant arrest of judgment (or reversal). *See State v. Ng*, 110 Wn.2d 32, 48, 750 P.2d 632 (1988). Accordingly, defense counsel's performance was not deficient and Brady's ineffective assistance of counsel claim fails.

The trial court did not err, Brady was not prejudiced by the prosecutor's improper remarks, and sufficient evidence supports the jury's verdict. In addition, Brady's SAG claims do

not raise any reversible error. Accordingly, we affirm Brady's conviction for second degree manslaughter.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, J.

We concur:

JOHANSON, A.C.J.

BJØRGEN, J.